**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| J.C. GIBSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:11-CV-733-BH |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the consent of the parties and the order of transfer dated July 6, 2011, this case has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed August 5, 2011 (doc. 19), and *Defendant's Motion for Summary Judgment*, filed September 6, 2011. (doc. 20). Based on the relevant filings, evidence, and applicable law, Plaintiff's motion is **DENIED**, Defendant's motion is **GRANTED,** and the final decision of the Commissioner is wholly **AFFIRMED**.

**I. BACKGROUND**[1]

**A. Procedural History**

J.C. Gibson (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claims for disability benefits and supplemental security income under Title II and XVI of the Social Security Act. (R. at 18.) Plaintiff applied for disability insurance benefits and supplemental security income benefits on October 26, 2007, alleging disability beginning September 16, 2007, due to bipolar disorder, depression, anger, sleepless nights,

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "R."

hearing voices, and anti-social stress. (R. at 30, 119, 123, 137.) His claims were denied initially and upon reconsideration. (R. at 58-69, 78-86.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and personally appeared and testified at a hearing held on June 9, 2009. (R. at 25-57, 87.) On July 31, 2009, the ALJ issued a decision finding him not disabled. (R. at 11-19.) Plaintiff appealed, and the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 22, 1-3.) Plaintiff timely appealed to the United States District Court pursuant to 42 U.S.C. § 405(g). (*See* doc. 1.)

**B. Factual History**

   **1. Age, Education, and Work Experience**

Plaintiff was born in 1946. (R. at 61.) He obtained a GED in the eleventh grade and has past relevant work experience as a parts runner and a security guard. (R. at 28, 30-31, 213.)

   **2. Medical Evidence**

On September 18, 2007, clinician Susan Delaney saw Plaintiff at Metrocare for a psychiatric diagnostic interview. (R. at 212.) Plaintiff stated that he was homeless and complained of depression, social anxiety, mood swings, and anger. (R. at 213.) He had started drinking at age 15 and had depression and anger as a child and as a teenager that worsened as he became an adult, especially when he was drinking. (*Id.*) He lost his job after getting into an accident while drinking and getting a DWI. (*Id.*) He began hearing voices at age 23, had lifelong anxiety, and used marijuana. (*Id.*) He was diagnosed with "bipolar depressed psychotic features", polysubstance abuse, and social anxiety disorder, and he was prescribed Vistaril, Cogentin, Valproic Acid, and Loxitane. (R. at 213-14.)

On October 17, 2007, clinician Susan Delaney saw Plaintiff again at Metrocare. (R. at 217.)

2

He reported that he was groggy in the mornings from taking sleeping pills, and still heard some voices even though they did not wake him. (*Id.*) His depression was better but not resolved, and his medications were adjusted. (*Id.*)

In January 2008, J. Lawrence Muirhead, Ph.D., performed a psychological evaluation of Plaintiff. (R. at 223.) Dr. Muirhead noted that Plaintiff came to the interview unaccompanied, was pleasant and competent, and had no difficulty participating in the interview. (*Id.*) He noted that Plaintiff's history of adjustment difficulties included mixed substance abuse dating to his adolescent years, including abuse of alcohol and marijuana and episodic use of cocaine. (*Id.*) Plaintiff acknowledged using both alcohol and marijuana at the time of the evaluation. (*Id* at 225.) He reported that he had been homeless for 2 years after losing his last job in August 2005. (R. at 223.) He had been seen at Metrocare for depression in September 2007, and he showed Dr. Muirhead his prescription bottles dated September or October 2007. (*Id.*) Dr. Muirhead opined that Plaintiff was non-compliant with his medications as all of the medicine bottles were partially full, and Plaintiff admitted his non-compliance. (R. at 224-225.) Dr. Muirhead noted that Plaintiff scored poorly on an immediate recall test, was unable to remember any of the items on a delayed recall test, and functioned in the low average range. (R. at 225.) He diagnosed Plaintiff with mixed substance abuse, adjustment disorder with depressed mood, personality disorder, and psychosocial stressors, and assigned him a GAF score of 60. (*Id.*)

In January 2008, Plaintiff underwent examination by Peter Louis, M.D. (R. at 229-31.) Plaintiff reported having a 50-year history of lower back pain with no back injury, which was made worse by sudden movement, prolonged walking, standing or heavy lifting. (R. at 229.) Dr. Louis noted that Plaintiff was able to ambulate without the aid of any assistive device, and had no history

3

of joint pain, stiffness, deformity, swelling, effusion, skin tightness photosensitivity, rheumatic fever or spinal deformity. (*Id*.) Plaintiff's back examination revealed that he had a normal station and gait and could get on and off the examination table without any difficulty. (R. at 230.) He had a slight straightening of the lumbar spine but no abnormal curvature, and there was no midline cervical, thoracic, lumbar, or sacral spinous tenderness or paraspinous muscle spasm. (R. at 230.) His neurological examination revealed no focal motor or sensory deficit. (*Id*.) Dr. Louis opined that Plaintiff should be able to lift or handle lightweight and medium weight objects frequently with minimal difficulty and should have moderate ability in walking without any assistive device 6 to 8 hours intermittently in an 8-hour work period. (R. at 229, 231.) He further opined that Plaintiff could sit 6 to 8 hours intermittently, lift/handle lightweight and medium weight objects frequently with minimal difficulty, and had no speech or hearing impairments. (R. at 231.) He diagnosed Plaintiff with chronic low back pain without radiculopathy and moderate degenerative changes of the left facet joints of L4-S1. (R. at 231, 234.)

In February 2008, Dr. Jeanine Kwun, a non-examining state physician, assessed Plaintiff's physical RFC. (R. at 256-63.) Dr. Kwun opined that Plaintiff could occasionally lift 50 pounds and frequently lift 25, and his push or pull was equally limited. (R. at 257.) She noted that Plaintiff could stand, walk, or sit for 6 hours in an 8 hour day, and concluded that he had no postural, manipulative, communicative, environmental, or visual limitations. (R. at 257-60.)

In February 2008, Michele Chappuis, Ph.D., a non-examining state medical consultant, conducted a psychiatric review technique in which she concluded that Plaintiff had mild functional limitations in his activities of daily living, difficulty in maintaining social functioning, and moderate limitation in maintaining concentration, persistence, or pace. (R. at 248.) She also noted that

4

Plaintiff suffered from 1 or 2 episodes of decompensation. (*Id.*) In her Mental Residual Functional Capacity ("RFC") Assessment, Dr. Chappuis found Plaintiff to be markedly limited in his ability to understand, remember, and carry out detailed instructions. (R. at 252.) She also found moderate limitations in his ability to understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and complete a normal workday and work week without interruptions from psychologically based symptoms and at a consistent pace without an unreasonable number and length of rest periods. (R. at 252-53.) She opined that Plaintiff could "understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work setting[s]". (R. at 254.)

In May 2009, Plaintiff was examined by Sarah Rasco, M.D. (R. at 317.) Dr. Rasco opined that Plaintiff suffered from a substantial loss of ability to apply commonsense understanding to carry out simple 1or 2-step instructions or detailed but uninvolved written or oral instructions. (R. at 317-18.) She also opined that he suffered from a substantial loss of ability to cope with normal work stress without exacerbating pathologically-based symptoms in regular, competitive employment and could, at best, only do so in a sheltered work setting where special considerations and attention were provided. (*Id.*) She noted that Plaintiff suffered some loss of the ability to demonstrate reliability by maintaining regular attendance and being punctual within customary tolerances; maintaining concentration for an extended period (being 2 hours); maintaining attention or staying on task for an extended period (being 2 hours); performing at a consistent pace without an unreasonable number

5

and length of rest periods or breaks; making simple work-related decisions, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; and finishing a normal work week without interruption from psychologically-based symptoms. (R. at 317-18.) She found that Plaintiff's psychological impairments would cause him to miss about 2 days of work a month. (R. at 319.) She noted that Plaintiff's polysubstance dependency was in remission and assigned him a GAF score of 40. (R. at 318.)

### 3. Hearing Testimony

On June 9, 2009, Plaintiff and a vocational expert testified at a hearing before the ALJ. (R. at 24-57.) Plaintiff was represented by an attorney. (R. at 25.)

#### a. *Plaintiff's Testimony*

Plaintiff testified that he was 62 years old, had obtained his GED in the eleventh grade, was married, and lived with his wife, niece and 2-year-old grand-niece. (R. at 28-29.) His niece took care of all of them. (R. at 34.) He held his last job in 2005 as a parts runner for heavy equipment and vehicles. (R. at 30-31.) Before that, he worked as a security officer for over 5 years. (*Id.*) He was unable to work because he had anxiety around people, coping problems, anxiety attacks, and difficulty functioning. (R. at 32.) He had always had anxiety attacks, having had them every day in the past. (*Id.*) The attacks had become worse over time and he could no longer control them. (*Id.*) His medication controlled the anxiety attacks to a certain extent, but they "still [bore] down on him." (*Id.*)

Plaintiff testified that he moved out of his home due to his anxiety disorder because he was not contributing, disoriented, and drinking a lot, but he moved back into his house in 2008. (*Id.*)

He stopped drinking after going to N.A. and receiving counseling, and had not been drinking since July 2008. (R. at 33.) He was no longer attending N.A. because he had to care for his wife, who had dementia. (R. at 33, 35.) He admitted that he was drinking between September 2007 and July 2008 while seeking treatment at MHMR, and that he was not always compliant with his medication regimen. (*Id.*) The first medication he was prescribed did not agree with him, so he was taken off of it. (*Id.*) He had been compliant with taking his medication for 1 year, which helped him greatly in his home life. (R. at 34-35.)

      He testified that sometimes he had to get away from his wife. (R. at 35.) He was able to take care of his own personal needs such as bathing and grooming without any problem (*Id.*) His niece or daughter drove him around to run errands. (R. at 36-37.) He could also ride the bus, but he preferred to walk if he was going a short distance. (*Id.*) He sometimes slept restlessly, but his medications helped him sleep. (*Id.*) He needed to take his medication at 7:00 or 8:00 p.m. to be functional by 7:00 a.m. (R. at 37-38.) His appetite was fairly decent, and he sometimes prepared meals, went grocery shopping early in the morning, washed dishes, did laundry, attended church, paid his bills with his niece, visited friends, did yoga, and read. (R. at 38-39, 49.) Plaintiff also testified that he and his wife cared for their 2 year old grand-niece 5 days a week from 4:00 p.m. until her mother got home from work after 9:00 p.m. (R. at 56.) He testified that they fed, bathed, and put the child to bed, but had not been caring for her for a few months prior to the hearing. (R. at 56-57.)

      He testified that he had not driven since his driver's license was taken away in 2005. (R. at 35.) His license was suspended for 2 or 3 years, but he had not attempted to get it back until now. (R. at 36.) Even if he had his driver's license, he believed that his panic attacks would prevent him

7

from performing his prior employment as a parts runner. (R. at 39.) He also testified that he "barely learned how to read a map scope" and that could result in a disastrous situation. (R. at 39-40.) He clarified that he was not a driver for 5 years, but actually worked in other positions, including driving to county facilities to take people with tickets to work off tickets and checking out equipment to plumbers and electricians. (*Id.*) He believed that he would also have a problem performing his prior employment because he was suspicious of people and believed that people were talking about him. (R. at 40-41.) He would have a problem working as a security guard at the courthouse because it entailed standing for 8 hours, which would affect his back and legs. (R. at 42.) He was not currently being treated for ailments to his back and legs but had been meaning to receive treatment. (*Id.*) He stated that he suffered from Hepatitis C, for which he was not yet receiving treatment. (*Id.*) He also did not believe he could perform his other prior security guard job because it required him to constantly walk the perimeter of the farmer's market and disrupt the homeless people under a bridge, which caused conflict. (R. at 43.) He began receiving Social Security payments in February or March of 2009. (R. at 38.)

Upon examination by his counsel, Plaintiff testified that he had pain in his legs and could walk about half a block before he had to stop and take a break. (R. at 43-44.) He also testified that he could not stand for 1 hour at a time without sitting down, but might be able to stand for 30 minutes. (R. at 44.) He could lift 10 to 15 pounds at a time without back pain. (*Id.*) He testified that he was diagnosed with bipolar disorder and had ups and downs and highs and lows that were not as bad since he began taking medication. (R. at 44-45.) He had highs and lows daily, and when he would get depressed, he just wanted to be by himself. (R. at 45.) He believed that he could not function due to his lows for 2 to 3 days a week. (R. at 46.) His panic attacks made him depressed

and made him just want to get away. (*Id*.) He also had unusual thoughts, such as thinking people were talking about him. (*Id*.) He had memory lapses where he forgot where he put something and would have trouble understanding what he was reading. (R. at 49.)

### *b. Vocational Expert Testimony*

Dr. Irons, a vocational expert (VE), also testified at the hearing. (R. at 49-54.) He testified that Plaintiff's past relevant history included jobs as a parts runner ("truck driver light", medium, semi-skilled SVP-3), shuttle driver (medium, semi-skilled, SVP-3), tool crib attendant (medium, skilled, SVP-5), supply clerk (heavy, semi-skilled, SVP-4), and security guard (light, semi-skilled, SVP-3). (R. at 50.) The ALJ asked the VE to opine whether a hypothetical person of Plaintiff's age, education, and work experience could perform Plaintiff's past relevant work with the following limitations: occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; detailed, non-complex work; and superficial interaction with the public and co-workers. (R. at 51.) The VE opined that the hypothetical person could not perform any of Plaintiff's past relevant work because all of the jobs involved interaction with co-workers. (R. at 52.) However, if the person was not limited from interacting with the public, the jobs of tool crib attendant, shuttle driver, parts runner, and truck driver light would be appropriate. (*Id*.) He ruled out the security guard position because of the possibility of confrontation. (*Id*.)

Plaintiff's attorney asked the VE to opine whether a hypothetical person of the same age, education, and past work experience as Plaintiff would be able to perform Plaintiff's past work with the following limitations: medium RFC; frequent problems understanding and carrying out simple 1 or 2 step instructions; frequent problems with the ability to cope with normal work stress; occasional problems with maintaining concentration, attending to a task and staying on task for an

9

extended period of time (2 hours); and occasional problems with being able to perform at a consistent pace, being able to make simple, work-related decisions, getting along with co-workers, responding fervently to changes in a routine work setting, and finishing a normal work week without interruption from psychological symptoms. (*Id*.) The VE opined that he doubted the person would be able to perform Plaintiff's past work because his production rate would likely fall below 85 percent. (R. at 53-54.) He also stated that a person that missed 18 or more days a year, or roughly one and a half days per month, would be precluded from employment. (R. at 54.) In response to a follow up question from the ALJ, the VE stated that the position of a tool crib attendant was at a reasoning level of 3. (*Id*.)

## C. **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on July 31, 2009. (R. at 19.) At step 1, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2009, and had not engaged in substantial gainful activity since September 16, 2007, his amended date of onset of disability. (R. at 14.) At step 2, she found that Plaintiff suffered from severe impairments, including alcohol abuse, affective mood disorder, social phobia, and moderate degenerative changes of the lumbar spine. (*Id*.) At step 3, she found that Plaintiff's impairments did not meet a listed impairment. (*Id*.) She next determined that Plaintiff would have the RFC to perform less than full-time competitive work and that he would be unable to work 8 hours per day, 5 days per week on a regular and continuing basis. (R. at 15.) The ALJ found that Plaintiff would not be able to perform his past relevant work. (*Id*.) At step 5, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, based on all of his impairments, including the substance use disorders, he did not have the ability to perform other work existing in

the national economy. (R. at 16.) She found that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities and therefore he would continue to have a severe impairment or combination of impairments. (*Id*.) However, she also found that if Plaintiff stopped the substance use, he would not have an impairment or combination of impairment that met or medically equaled any listed impairment. (*Id*.) She further found that if Plaintiff stopped the substance use, he would have the RFC to lift or carry 25 pounds frequently and 50 pounds occasionally, stand or walk 6 hours in and 8 hour workday, and sit 6 hours in an 8 hour workday. (R. at 17.) The ALJ limited Plaintiff's ability to push or pull to the same weights listed above and found that he could perform detailed but not complex work that involved only superficial interaction with coworkers. (*Id*.) She found that Plaintiff would be able to perform past relevant work if he stopped the substance use. (R. at 19.) She explained that because Plaintiff would not be disabled if he stopped the substance use, his substance use disorders were a contributing factor material to the determination of disability. (*Id*.) She concluded that Plaintiff had not been disabled, as defined in the Social Security Act, at any time from the alleged onset date, through the date of the decision. (*Id*.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). "Substantial evidence is that which is relevant and sufficient for a

11

reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. at 436 & n.1.

**2. Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When a claimant's insured status has expired, the claimant "must not only prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."

12

*Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at Step 5 to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar

13

evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). After the Commissioner fulfills this burden, the burden shifts back to the claimant to show that he cannot perform the alternate work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### 3. Standard for Finding of Entitlement to Benefits

Plaintiff asks the Court to reverse the Commissioner's decision and award him the benefits he is due without any further administrative proceedings. (*See* Pl. Br. at 14.) In the alternative, Plaintiff asks the Court to reverse the Commissioner's decision and remand the case so that the "materiality of [Plaintiff's] substance use and his RFC may be further evaluated with the proper legal standards". (*Id.*) When an ALJ's decision is not supported by substantial evidence, the case may be remanded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, 2009 WL 3029772, at * 10 (N.D. Tex. Sept. 22, 2009). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at * 11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

### B. Issues for Review

Plaintiff raises the following issues for review:

1. The ALJ's finding that Plaintiff's substance use is material to the determination of disability is not supported by substantial evidence;

2. The ALJ's RFC finding is not supported by substantial evidence.

14

(Pl. Br. at 8, 11.)

**C.  Issue One: Substance Use**

Plaintiff contends that the ALJ's finding that his substance use disorder was material to a finding of disability is not supported by substantial evidence.  (*See* Pl. Br. at 8-11.)

An individual is not disabled if alcoholism or drug addition is a contributing factor material to the determination of disability. 42 U.S.C. § 1382c(a)(3)(J).  In determining whether drug or alcohol addiction is a contributing factor material to the determination of disability, the ALJ considers whether a claimant would still be found disabled if he or she discontinued using drugs or alcohol.  20 C.F.R. § 404.1535(b)(1).  If a claimant's remaining limitations after discontinuing substance abuse would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability, and the claimant will be found not disabled.  20 C.F.R. § 404.1535(b)(2)(I).  The claimant bears the burden of proving that drug or alcohol addiction is not a material contributing factor to his disability.  *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

Here, the ALJ's finding that Plaintiff would not be disabled absent his substance use is not erroneous and is supported by substantial evidence.  The record contains evidence showing that Plaintiff continued to use alcohol and drugs during the relevant time period.  On September 16, 2007, when Plaintiff first presented himself at Metrocare, he reported alcohol and marijuana use. (R. at 213.)  He also noted that he heard voices beginning at age 23 when he was drinking, and that the voices got worse with alcohol use.  (R. at 223.)  Plaintiff also admitted that his depression worsened with alcohol use.  (R. at 15, 213, 219, 223.)  In January 2008, Dr. Muirhead noted that Plaintiff's history of adjustment difficulties included mixed substance abuse dating to his adolescent years, and included abuse of alcohol, marijuana, and episodic use of cocaine.  (*Id.*)  Plaintiff also

15

reluctantly acknowledged to Dr. Muirhead that he was using both alcohol and marijuana at the time of his evaluation and was being non-compliant with the medication he had been prescribed. (R. at 224-25.) Furthermore, Plaintiff testified that he did not complete any program to stop his polysubstance abuse, and he was unable to provide a specific date regarding when he stopped drinking. (R. at 32-33.) Moreover, until he was fired for getting a DWI, Plaintiff had been able to work for years with these impairments that allegedly started years earlier. (R. at 213, 219). A claimant's ability to work for several years with the same impairments that the claimant alleged to be disabling supports a finding of not disabled. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

The ALJ's finding that absent substance abuse, Plaintiff's conditions did not meet or equal a listed impairment is not erroneous and is supported by substantial evidence of the record. Plaintiff's motion for summary judgment on this ground is denied.

## D. Issue Two: RFC Finding

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence. (*See* Pl. Br. at 11-14.)

Residual functional capacity is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1) (2003). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). "The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). An ALJ may consider an individual to have no limitation or restriction with respect to a functional capacity when

there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction. SSR 96-8p, 1996 WL 374184, at *1. An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. *Id.* An ALJ's decision can be supported by substantial evidence even if the ALJ does not specifically discuss all evidence that supports his decision or all evidence that was rejected. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Substantial evidence exists when there is enough relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *See Leggett*, 67 F.3d at 564. Even if the reviewing court would reach a different conclusion based on the evidence in the record, the court must defer to the ALJ if there is substantial evidence to support his conclusion. *Id.* This standard of review, however, is not simply an uncritical "rubber stamp" and "involves more than a search for evidence supporting the" ALJ's decision; the reviewing court "must scrutinize the record and take into account whatever fairly detracts from the substantiality of the evidence supporting the" ALJ's decision. *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343.

Here, the ALJ evaluated all of the evidence of record and concluded that if Plaintiff were to cease his polysubstance abuse, he could perform a modified range of medium work. (R. at 17-18.) She found that Plaintiff had the RFC to lift or carry 25 pounds frequently and 50 pounds occasionally, stand or walk 6 hours in and 8 hour workday, sit 6 hours in an 8 hour workday, and

17

his push or pull limitations were equally limited. (R. at 17.) The ALJ also found that Plaintiff could perform detailed but not complex work that involved only superficial interaction with coworkers. (*Id*.) Her determination that Plaintiff had limitations, but not to a disabling degree, was based on a thorough analysis of the evidence before her. (R. at 17-18.)

Plaintiff argues that the ALJ's limitation of Plaintiff to medium work is not supported by the record. (Pl. Br. at 12-13.) He specifically disputes the ALJ's finding that absent substance abuse, his RFC would include the ability to lift or carry 25 pounds frequently and 50 pounds occasionally. (*Id.*) In limiting Plaintiff to medium work, the ALJ relied in part on the physical consultative examination of Dr. Louis. (R. at 18, 229-31.) She stated that the examination revealed moderate degenerative changes in Plaintiff's facet joints, but pointed out that his physical examination revealed essentially no abnormalities. (R. at 18.) Plaintiff had no tenderness or muscle spasm in his spine, a normal gait and station, intact muscle strength, a full range of motion, and negative straight leg raises to 90 degrees. (R. at 18, 229-31.) The ALJ also considered the fact that Plaintiff had not regularly pursued or required medical care, exhibited improvement with decreased substance use and medication compliance, and participated in daily activities, including taking care of the needs of his wife. (R. at 18.) The ALJ's limitation of Plaintiff to medium work is supported by substantial evidence of the record.

Plaintiff also argues that the ALJ failed to consider the combined impact of his mental and physical impairments on his physical symptoms of pain. (Pl. Br. at 13.) He cites authority holding that "[w]hen medical findings do not substantiate the existence of physical impairments capable of producing alleged pain and other symptoms, the ALJ must investigate the possibility that a mental impairment is the basis of the symptoms." *Id.* citing *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir.

18

1994). He argues that the treating opinion of Dr. Rasco confirms that Plaintiff's physical symptoms are exacerbated by his mental impairments. (Pl. Br. at 13.) The ALJ acknowledged that Plaintiff's treating psychiatrist proposed serious limitations in function, which would preclude competitive work, but she also pointed out that Dr. Rasco's determination was based on a diagnosis that included substance abuse. (R. at 15, 18, 318.) The ALJ was not required to accept the medical source's conclusions if they were not supported by the record because the determination of disability falls within the purview of the ALJ. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Finally, Plaintiff argues that the ALJ's finding with respect to his ability to interact with coworkers and the public is unclear. (Pl. Br. at 11-12.) Plaintiff is referring to the fact that the ALJ limited him to superficial interaction with coworkers in his RFC but also described this limitation as "incidental interaction with others" in the body of her decision. (*Id.*) A case should not be remanded for a simple decision-writing error in the RFC summary when the ALJ correctly stated Plaintiff's limitation in the detailed explanation of his RFC, (R. at 17), and explored both versions of this limitation in her hypothetical questions to the VE, (R. at 51-52). The Fifth Circuit has held that procedural perfection in administrative proceedings is not required, and that a court will not vacate a judgment unless the substantial rights of a party have been affected. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988); *Guillory v. Comm'r of Soc. Sec.*, 2010 WL 376806, at *11 (W.D. La. Jan. 25, 2010) (finding similar typographical error harmless).

Because the ALJ's RFC finding is supported by substantial evidence, remand is also not required on this issue.

## III.  CONCLUSION

Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the final decision of the Commissioner is wholly **AFFIRMED**.

**SO ORDERED,** on this 3rd day of January, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE